NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ILANA W., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY,[1] Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 23-02053 (GC) <br><br> **OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Plaintiff Ilana W.'s[2] appeal from the final decision of the Commissioner of the Social Security Administration issued under Title II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's decision.

---

[1]     Martin J. O'Malley, in his official capacity, is substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d). This action "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security." 42 U.S.C. § 405(g).

[2]     Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

I.     **BACKGROUND**

    A.     **Procedural History**

This social security appeal centers on Plaintiff Ilana W.'s challenge to the Commissioner of Social Security's determination that Plaintiff does not qualify for disability insurance benefits.

Plaintiff has a college education and worked as a freelance writer and social worker. (AR 222-223, 238.[3]) On November 26, 2019, Plaintiff protectively filed an application for disability insurance benefits. (*Id.* at 12.) She alleged an onset disability date of June 10, 2019, due to vulvodynia, interstitial cystitis, depression, and anxiety. (*Id.* at 12, 15.) The application was denied on July 15, 2020, and upon reconsideration on September 3, 2020. (*Id.* at 60-61, 72-74.) Plaintiff requested a hearing that was held telephonically before an administrative law judge (ALJ) on October 25, 2021. (*Id.* at 28-49.)

On December 8, 2021, the ALJ issued a decision that was unfavorable to Plaintiff. (*Id.* at 12-27.) The ALJ found that Plaintiff was able to perform light work with additional postural and mental limitations and was therefore not disabled for purposes of disability insurance benefits. (*Id.*) When the Appeals Council denied Plaintiff's request for review on February 9, 2023, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 5, 86-87.)

On April 11, 2023, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff argues that "she has been disabled since June 10, 2019," and asks this Court to reverse the Commissioner's decision and to award benefits from the alleged disability onset date. (*Id.* at 1-2.)

---

[3]     "AR" refers to the Administrative Record. (*See* ECF No. 3.) This Opinion cites the Record's internal page numbers when referring to the Administrative Record. Page numbers for all other cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Plaintiff filed her opening brief on July 11, 2023. (ECF No. 4.) The Commissioner opposed on October 6, 2023. (ECF No. 10.) Plaintiff replied on October 31, 2023. (ECF No. 13.)

### B.     The ALJ's Decision

On December 8, 2021, the ALJ found that Plaintiff was able to perform light work with additional postural and mental limitations and was therefore not disabled for purposes of disability insurance benefits. (AR 12-27.) The ALJ set forth the five-step process for determining whether an individual is disabled and entitled to said benefits and then examined the evidence at each step. (*Id.* at 12 (citing 20 C.F.R. § 404.1520(a)).)

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2023, and "has not engaged in substantial gainful activity[4] since June 10, 2019, the alleged onset date." (*Id.* at 15 (citing 20 C.F.R. § 404.1571).)

Second, the ALJ determined that Plaintiff suffered from "the following severe impairments: interstitial cystitis; vulvodynia; depressive disorder; and anxiety disorder." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) The ALJ also found that Plaintiff suffers from the following non-severe impairments: status post-sleeve gastrectomy and ventral hernia repair; diabetes mellitus type 2; hypothyroidism; and left lower lobe pulmonary nodule, which are "non-severe impairments" because they do not cause "more than minimal limitation in [Plaintiff's] ability to perform basic work activities for 12 consecutive months relevant to this decision." (*Id.*) As to the Plaintiff's references to migraine, the ALJ found that a "medically determinable impairment may

---

[4]     "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [he or she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he or she] worked before." *Id.* § (a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

3

not be established solely on the basis of a claimant's allegations regarding symptoms," and "must be established by objective medical evidence," which was not met with respect to migraine. (*Id.*)

Third, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 15-17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) After summarizing the record, the ALJ concluded that the evidence did "not show such marginal adjustment that the claimant has minimal capacity to adapt to changes in the environment or some new demands. [The evidence] does not show that simple changes or increased demands have led to a deterioration of the claimant's functioning or inability to function outside the home." (*Id.* at 17.)

Fourth, the ALJ outlined Plaintiff's residual functional capacity (RFC).[5] (*Id.* at 17-20.) The ALJ considered "the entire record" and Plaintiff's medical history and notes, including those of Dr. Syed Siddiq; Dr. Jorge Alvarez (Plaintiff's treating pain specialist); Dr. Hailing Zhang (a treating physician); Dr. Michael Inberg (Plaintiff's primary care physician); and records of Plaintiff's visits to Garden State Urology. (*Id.* at 17-22; ECF No. 4 at 9-10.) During the hearing, the ALJ also heard from both Plaintiff and a Vocational Expert. (AR 19-22; 28-49.) Finally, the ALJ considered a third-party function report submitted by Plaintiff's sister. (*Id.* at 20.) The ALJ found that Plaintiff could "perform light work as defined in 20 C.F.R. 404.1567(b), with exceptions."[6] (*Id.* at 17.) The ALJ found that with regard to "*exertional limitations*," Plaintiff has

---

[5] "Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his [or her] impairments." *Naviglia v. Colvin*, Civ. No. 15-660, 2016 WL 4733174, at *4 n.3 (W.D. Pa. Sept. 9, 2016).

[6] The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. "Light work" is defined as work that involves "lifting no more

4

the RFC "to perform less than full range of light work except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours; and can push/pull as much as she can lift/carry." (*Id.*) Regarding "*postural* limitations," Plaintiff cannot "climb ladders, ropes, or scaffolds; and can stoop occasionally, crouch occasionally, and crawl occasionally." (*Id.*) And as for mental limitations, Plaintiff "is able to perform simple, routine tasks," "simple work-related decisions," and "interact with the public occasionally." (*Id.*) The ALJ also found that Plaintiff was "unable to perform any past relevant work" as a social worker and writer. (*Id.* at 20-21 (citing 20 C.F.R. § 404.1565.)

At the fifth and final step, the ALJ concluded that given Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 21 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Because additional limitations impeded Plaintiff's ability to perform all or substantially all of the requirements of the range of light work, the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual" with Plaintiff's characteristics. (*Id.* at 21-22.) The expert testified at the hearing that the individual would be able to perform the requirements of jobs such as: a routing clerk, "with about 104,000 jobs nationally"; a mail clerk, "with about 12,000 jobs nationally"; and a housekeeping cleaner, "with about 221,000 jobs nationally." (*Id.* at 22.)

---

than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.* § (b).

5

## II.  LEGAL STANDARD

### A.  Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence — particularly certain types of evidence (*e.g.*, that offered by treating physicians) — or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

"Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Legal issues, in contrast, are subject to a plenary review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . ." (quoting *Chandler*, 667 F.3d at 359)).

**B.     Determining Disability**

To be eligible for disability insurance benefits under the Social Security Act, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," i.e., work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer*, 186 F.3d at 427-28.  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

**C.     Sequential Evaluation**

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims.  The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.
>
> [*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)).]

"The evaluation will continue through each step unless it can be determined at any point

7

that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the ultimate burden at the first four steps, at which point the burden shifts to the Commissioner at the fifth step.  *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.").

### III.  DISCUSSION

On review of the ALJ's decision (*see* AR 12-27) and the Administrative Record (*see generally* AR), the Court finds good cause to **AFFIRM** the Commissioner's decision.  In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence.  *Cotter*, 642 F.2d at 706.  Here, the ALJ provided sufficient reasoning for the Court to determine that the ALJ's findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances two principal arguments: (1), "the ALJ failed to incorporate limitations consistent with the Plaintiff's severe impairments into the RFC," and (2) the ALJ erred in finding "the medical opinion of the Plaintiff's treating physician Dr. Ingber not persuasive."  (ECF No. 4 at 12, 17.)  The Court will address each of these arguments in turn.

#### A.  RFC Determination

Plaintiff's first argument on appeal is that the ALJ erred by failing to incorporate limitations consistent with Plaintiff's severe interstitial cystitis into the ALJ's RFC determination. Plaintiff argues that the RFC determination's "silence on the major symptoms of the Plaintiff's severe impairments, specifically the interstitial cystitis" constitutes reversible error, because the ALJ "failed to incorporate any additional limitations consistent with the severity of the Plaintiff's impairments or her testimony regarding the frequency of her bathroom use."  (*Id.* at 12, 14-15 ("Plaintiff testified to using the bathroom up to every 20 minutes due to urgency and being in the

bathroom 10 minutes each time." (citing AR 39)).) Plaintiff contends that this case in analogous to *Williams v. Comm'r, Soc. Sec. Admin.*, where this Court reversed and remanded due to the ALJ's failure to consider evidence of the plaintiff's urinary frequency. Civ. No. 18-13465, 2019 WL 4574502, at *2-3 (D.N.J. Sep. 20, 2019). In *Williams*, the ALJ's decision did not cite or discuss a doctor's treatment report regarding the plaintiff's overactive bladder despite the report being admitted into evidence during the disability hearing. *Id.* at *2. The court rejected the Commissioner's "*post hoc* explanation of the ALJ's decision when the foundation for that explanation [was] nowhere to be found in the ALJ's written decision." *Id.* at *3 (citing *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456 (D.N.J. 2016)).

In response, the Commissioner argues that the ALJ's decision here differs from that in *Williams* in two critical ways. First, the ALJ in the present case "found at step two that interstitial cystitis caused work-related limitations and was severe," unlike in *Williams*, where the ALJ found no work-related limitations due to the plaintiff's impairments. (ECF No. 10 at 11-13.) Second, the ALJ here "discussed this impairment throughout the sequential evaluation process and considered Plaintiff's complaints of urinary frequency within the RFC discussion." (*Id.*) The Commissioner claims that Plaintiff essentially asks this Court to impermissibly "reweigh the evidence in [Plaintiff's] favor." (*Id.* at 14.)

After careful consideration, the Court agrees with the Commissioner that, unlike the ALJ in *Williams*, the ALJ in the present case considered and discussed Plaintiff's interstitial cystitis sufficient to permit meaningful review. Additionally, the ALJ's RFC determination limiting Plaintiff to light exertion with additional limitations was supported by "such relevant evidence as a reasonable mind might accept as adequate." *See Hagans*, 694 F.3d at 292 (quoting *Plummer*, 186 F.3d at 427). First, the ALJ specifically considered Plaintiff's testimony in his RFC

9

determination, including her testimony that she "has to use the bathroom often." (AR 18.) While "'any statements of the individual concerning his or her symptoms must be carefully considered,' . . . the ALJ is not required to credit them." *Chandler*, 667 F.3d 356 at 363 (citing SSR 96–7p (July 2, 1996) and 20 C.F.R. § 404.1529(a)). Additionally, the regulation governing the evaluation of symptoms states, in relevant part:

> [I]n evaluating the intensity and persistence of [a claimant's] symptoms, including pain, we will consider all of the available evidence, including [a claimant's] medical history, the medical signs and laboratory findings, and statements about how [a claimant's] symptoms affect [the claimant]. We will then determine the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [a claimant's] ability to work.
>
> [20 C.F.R. § 404.1529(a).]

At the hearing, Plaintiff testified that she needs to use the restroom every forty-five minutes on a "good day" and every twenty minutes on a "bad day." (AR 39.) The ALJ found, however, that Plaintiff's testimony regarding "the intensity, persistence, and limiting effects of her conditions" was not "consistent with the evidence in the record." (*Id.* at 18.) The ALJ's evaluation of Plaintiff's testimony is supported by substantial evidence in the record. For example, the treatment notes in Exhibit 10F show that Plaintiff's urinary frequency was once every 1-2 hours during the day, and that her urinary frequency symptoms had started to improve at that time. (*Id.* at 659.) The ALJ considered Exhibit 10F when evaluating the severity of Plaintiff's impairments. (*Id.* at 15.) The ALJ also cited Exhibit 13F in his RFC determination (*id.* at 19-20), which also reflects a 1-2 hour urinary frequency (*id.* at 702). And the ALJ reviewed the medical records of Dr. Alvarez and records from Garden State Urology, both of which reflect that Plaintiff reported "difficulty urinating" and "increased urinary frequency" without further details regarding

10

frequency. (*Id.* at 18-19 (citing Exhibit 3F, AR 363-372).)

Given the ALJ's analysis and citation to the record, this case is unlike *Williams*, where the parties agreed that the ALJ's decision "neither cited, nor discussed" a report reflecting the plaintiff's urinary frequency. 2019 WL 4574502, at *2. In *Williams*, instead of expressly affording the report little or no weight, the ALJ "simply said nothing about this evidence." *Id.* at *3. By contrast, the ALJ here cited and discussed Plaintiff's complaints of increased urinary frequency, and relied on records reflecting Plaintiff's complaints. (AR 17-19.) Furthermore, the ALJ's conclusion regarding the intensity and persistence of Plaintiff's symptoms is not "overwhelmed" by conflicting evidence, such that "a finding of disability, or at the very best, work in a highly accommodated environment that cannot be considered substantial gainful activity" is the only reasonable result. (*See* ECF No. 4 at 21.) Most of the references in the record to Plaintiff's urinary frequency — which span a period of several years — do not describe how often and how long Plaintiff must use the restroom; and the few specifics that are contained in the record do not specifically match Plaintiff's testimony. (*See* AR 39-40 (Plaintiff's testimony that she has to urinate anywhere from every 45 to 20 minutes for between 2 to 10 minutes); 365 (treatment records of Dr. Alvarez noting "some urological symptoms" including "difficulty urinating" and "increase[d] urinary frequency"); 702 (treatment notes indicating that Plaintiff "urinates every 1-2 hours in the daytime").) Accordingly, the Court finds that the ALJ acted within his discretion in weighing Plaintiff's testimony regarding the "intensity, persistence, and limiting effects" of her interstitial cystitis symptoms, including her urinary frequency, against other evidence in the record and ultimately declining to find Plaintiff disabled. (*See* AR 18.) Because the ALJ has cited "more than a mere scintilla" of evidence in support of his findings, which are not "overwhelmed" by contradictory evidence, the Court will affirm the ALJ's decision. *See Wellington W. v. Kijakazi*,

11

Civ. No. 22-05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record."); *Jose S. v. Kijakazi*, Civ. No. 19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) (finding that the ALJ's discussion of the objective medical evidence "indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record.'").

### B. The ALJ's Evaluation of Dr. Ingber's Opinions

Plaintiff next argues that the ALJ did not sufficiently justify his conclusion that Dr. Ingber's opinions on Plaintiff's limitations had "significantly reduced persuasiveness." (ECF No. 4 at 24.) Plaintiff contends that the ALJ's "blanket statement" that Dr. Ingber's opinions were "inconsistent with the record" is insufficient to allow for a meaningful review of the ALJ's analysis. (*Id.* at 22-23.) The ALJ failed "to cite specific medical evidence in the record to support his findings," and the evidence that the ALJ "appears to rely on . . . are not inconsistent with Dr. Ingber's opinion, and . . . only bolster the same." (*Id.* at 25.) Had the ALJ properly considered Dr. Ingber's opinion, the additional limitations would have supported a finding that Plaintiff would be off-task ten percent or more of the workday on an ongoing basis, which should result in a finding that the individual could not maintain competitive employment. (*Id.*)

In response, the Commissioner asserts that the ALJ sufficiently cited specific objective evidence that was inconsistent with Dr. Ingber's finding of "extensive limitations," and "evaluated the record as a whole, including contrasting medical evidence from two other physicians when he determined that Dr. Ingber's extensive limitations were not persuasive." (ECF No. 10 at 14-15.)

The Court finds that in contrast to Plaintiff's argument, the ALJ did not rely on a mere "blanket statement" to justify his finding that Dr. Ingber's opinions had "significantly reduced

12

persuasiveness." (*See* ECF No. 4 at 24.)  The ALJ disagreed with the portions of Dr. Ingber's October 8, 2021 interstitial cystitis medical source statement finding that Plaintiff would have "difficulty focusing/concentrating for 34% to 66% of an 8-hour workday; on a daily basis [Plaintiff] would need to supine rest (lie down or recline) for at least 1 ½ - 2 hours during an 8-hour workday; and [Plaintiff] would be off-task 25% or more of the workday." (*Id.* at 20.)  The ALJ found that these specific opinions regarding Plaintiff's limitations were "not consistent with the overall medical evidence of record." (*Id.*)  The ALJ supported this finding with a thorough discussion of the Administrative Record and cited the record throughout his RFC determination.

First, the ALJ discussed Plaintiff's own May 30, 2020 function report, which shows that Plaintiff's conditions "do not adversely affect her abilities to lift, squat, bend, stand, reach, walk, kneel, talk, hear, climb stairs, see, and use hands." (*Id.* at 18 (citing Exhibit 8E at 5, AR 250).)  The ALJ also reviewed Dr. Siddiq's August 27, 2019 medical notes showing that at the time, Plaintiff's abdomen was "soft and non-tender" and that the plan of care was "to continue with present management and medications." (*Id.* (citing Exhibit 1F, AR 315).)  Next, the ALJ discussed Dr. Alvarez's April 27, 2020 examination, showing that Plaintiff "presented with pain in the pelvis" and "rated the pain at 5." (*Id.* at 19.)  While Plaintiff expressed to Dr. Alvarez that her pelvic pain was "interfering with work," there were no other details in Dr. Alvarez's notes showing to what extent Plaintiff's pain interfered with the workday. (*Id.* at 363-372.)  Dr. Alvarez's notes also show that Plaintiff reported "no shortness of breath when walking" or "lying down, . . . no muscle aches, no muscle weakness, . . . no numbness, no seizures, no dizziness, no migraines," and "no fatigue." (*Id.* at 365.)  Against this backdrop, the ALJ disagreed with Dr. Ingber's findings that Plaintiff "would need to supine rest (lie down or recline) for at least 1 ½ - 2 hours during an 8-hour workday" and "would be off-task 25% or more of the workday," and expressly cited these

13

exhibits throughout his RFC determination.  (*Id.* at 18-20.)

In addition, the ALJ discussed the October 15, 2021 mental status examination of Dr. Zhang, which found that although Plaintiff's concentration was "limited," her "insight and judgment were fair . . . she was oriented to all three spheres; and thought content showed no delusions.  The claimant showed good impulse control."  (*Id.* at 19 (citing Exhibit 9F at 3, AR 596).)  The ALJ expressly cited Dr. Zhang's examination notes when finding that Dr. Ingber's statement that Plaintiff would have "difficulty focusing/concentrating for 34% to 66% of an 8-hour workday" had reduced persuasiveness.  (*Id.* at 20 (citing AR 596).)

Finally, the ALJ reviewed the Disability Determination Service (DDS) consultants' findings, which found that Plaintiff could "occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday," and had various mild and moderate limitations in cognitive abilities.  (*Id.* at 19-20.)  Citing the same evidence discussed above, the ALJ found that their opinions were "partially consistent" with "the overall medical evidence."  (*Id.* at 20.)  The ALJ then assessed even greater limitations than the DDS physicians, given that they "did not have the benefit of observing [Plaintiff] personally, and they did not incorporate the entirety of [Plaintiff's] limitations."  (*Id.*)

In finding reduced persuasiveness for portions of Dr. Inberg's medical source statement, the ALJ not only cited the specific medical evidence discussed above, but also reached conclusions that are "rational" and "supported by substantial evidence."  *See Gober*, 574 F.2d at 775-76.  Therefore, the Court finds that the ALJ did not fail to consider Dr. Ingber's professional opinions, but "reasonably determined they were not persuasive" after appropriately weighing the "supportability and consistency" of Dr. Ingber's opinions.[7]  *See* 20 C.F.R. §§ 404.1520c(a), (b)(2)

---

[7]     (ECF No. 10 at 15.)

14

(stating that the agency will not give "controlling weight . . . to any medical opinion(s) or prior administrative medical finding(s)," but will evaluate those opinions under "the factors listed in paragraphs (c)(1) through (c)(5) of this section," the most important being "supportability" and "consistency"). (AR 20 (discussing both the "supportability" and "consistency" of Dr. Ingber's findings compared with the entire record).) While Plaintiff may disagree with the ALJ's conclusions, where "evidence in the record is susceptible to more than one rational interpretation," this Court "must accept the Commissioner's conclusion." *Izzo*, 186 F. App'x at 284.

## IV.   CONCLUSION

For the reasons set forth above, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: April 30, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE